UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM ROBERT BOLDUC, | ) Case No. EDCV 16-2601-AG (JPR) |
| Petitioner, | ) |
| | ) ORDER ACCEPTING FINDINGS AND |
| v. | ) RECOMMENDATIONS OF U.S. |
| | ) MAGISTRATE JUDGE |
| ROSEMARY NDOH, Warden, | ) |
| | ) |
| Respondent. | ) |

The Court has reviewed the Petition, records on file, and Report and Recommendation of U.S. Magistrate Judge. See 28 U.S.C. § 636(b)(1). On August 27, 2019, Petitioner filed objections to the R. & R., in which he mostly simply repeats arguments from his Petition and Traverse. A few of his contentions warrant discussion, however.

The Magistrate Judge did not "overlook[]" that In re Dixon's procedural bar, see 41 Cal. 2d 756, 762 (1953), did not apply to Petitioner's ineffective-assistance-of-counsel claims. (Objs. at 3-4.) To the contrary, she recognized that as the state court found, although the merits claims raised in those grounds were procedurally defaulted under Dixon, the corresponding

1

ineffective-assistance arguments were reviewable. (<u>See</u> R. & R. at 23-25.) The R. & R. considered each of those arguments. (<u>See</u> generally <u>id.</u> at 27-61.) The Magistrate Judge also rightly held that ground 10 was barred under the invited-error doctrine because Petitioner failed to register a timely objection to the challenged ruling. (<u>Id.</u> at 25-27.) He maintains that his objection was "timely" (Objs. at 32), but the R. & R. endorsed the court of appeal's sound explanation for why it wasn't (<u>see</u> R. & R. at 25-26). In any event, as the Magistrate Judge noted (<u>id.</u> at 24-25, 26-27), by not contesting either procedural bar in his Traverse, Petitioner forfeited any argument that they didn't apply.

As the R. & R. found, most of Petitioner's ineffective-assistance claims fail because he has not demonstrated that either trial or appellate counsel rendered deficient performance. For instance, Petitioner asserts that the Magistrate Judge erred in allegedly finding that no objection to the prosecutor's summation was warranted because he properly told the jury that it "could convict [Petitioner] as long as it found [his] theory reasonable." (Objs. at 5.) But the Magistrate Judge actually said the exact opposite: the prosecutor's remarks were appropriate because "nowhere . . . did he state that the jury could convict him as long as it found the prosecution's theory reasonable." (R. & R. at 32.) The prosecutor's argument that the "only reasonable conclusion" based on "all of the evidence" was that Petitioner was guilty was appropriately evidence based, <u>see</u> <u>United States v. Weatherspoon</u>, 410 F.3d 1142, 1147 (9th Cir. 2005), and did not shift the burden of proof from the prosecution

2

(see Objs. at 5-6).

Petitioner's newfound suggestion that counsel should have objected when the prosecutor "analogized the burden of proof to putting a puzzle together" (id. at 6) was not raised before the Magistrate Judge. In any event, the remark made no reference to the burden of proof and was an appropriate comment on the jury's task. Cf. People v. Centeno, 60 Cal. 4th 659, 670 (2014) (disapproving of use of physical puzzle as visual aid because it "depict[ed] an actual and familiar object unrelated to the evidence").

The R. & R. correctly found that trial counsel was not ineffective for not challenging the admission as a "fresh complaint" of a voicemail JD1 attempted to leave for Petitioner or requesting a limiting instruction related to Tom T.'s fresh-complaint testimony about JD2. As to JD1's voicemail, which Petitioner apparently never received, he reiterates that it was inadmissible because the "fresh complaint doctrine requires the disclosure to be made" to — and received by — another person. (Objs. at 26.) But once again he has failed to offer any support for that assertion, which is not addressed in People v. Brown, 8 Cal. 4th 746 (1994), the only case he cites. Because a victim's disclosure of a sexual assault may be admissible in the government's case-in-chief to show "that the disclosure was made and the circumstances under which it was made," Brown, 8 Cal. 4th at 750, the fresh-complaint doctrine's focus is on the declarant, not the recipient, and there is no principled reason for admissibility to hinge on whether the complaint was actually received by the intended party.

3

As for Tom T.'s testimony about JD2's revelation of sexual assault, Petitioner claims that the R. & R. overlooked how "extensive[]" it was. (Objs. at 22.) But the R. & R. considered the extent of Tom T.'s testimony, citing the three transcript pages comprising it, and noted that it was limited to an account of "how [JD2's] allegations of sexual abuse came to light." (R. & R. at 57.) Thus, as to both forms of fresh-complaint evidence, the Magistrate Judge did not "misunderstand" the doctrine (see Objs. at 23) because her findings were based on the evidence's ability to shed light on the relevant circumstances as opposed to the substance of the complaints themselves. Of course, as the Magistrate Judge also found, any undue prejudice from that evidence was blunted because JD1 and JD2 both testified, allowing the jury to assess their credibility firsthand. (See R. & R. at 58.)

The Magistrate Judge correctly found that the jury instructions Petitioner now challenges were proper and that therefore counsel were not ineffective for not challenging them. For instance, she did not "overlook[]" the constitutional scope of Petitioner's challenge to CALCRIM 1190 (Objs. at 14), as she expressly rejected that claim (R. & R. at 45-47). And although Petitioner faults her for relying on cases that "lack applicability," he does not identify a basis for that assertion and the Court doesn't see one. (See Objs. at 14-15.) Similarly, he agrees that any objection to CALCRIM 1193 "would have been overruled" (id. at 17) but maintains that "trial counsel should still have objected" (id.). That assertion is baseless. See, e.g., Rupe v. Wood, 93 F.3d 1434, 1445 (9th Cir. 1996) (noting

4

that "failure to take a futile action can never be deficient performance").

To be sure, as the Magistrate Judge recognized, Petitioner identified several instances when an objection from counsel might have been appropriate. (See R. & R. at 36 (prosecutor's "exhortation to the jury to '[s]top'" Petitioner from committing sex crimes "border[ed] on misconduct" (citation omitted)), 42 (prosecutor's statements that defense expert's opinion "was so far from the truth" that he "felt it was necessary" to call expert to rebut it had "no evidentiary basis and were likely improper").) But the Magistrate Judge rightly concluded that Petitioner failed to establish that counsel's silence wasn't strategic. There were several discernible strategic reasons why he might have held off on objecting to the few improper summation remarks. (See, e.g., id. at 37.) Under these circumstances, Petitioner's failure to obtain a declaration from trial counsel to counter the "strong presumption" that his silence was "for tactical reasons rather than . . . sheer neglect," Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam), proved fatal to his claims, see Gentry v. Sinclair, 705 F.3d 884, 899-900 (9th Cir. 2012) (as amended Jan. 15, 2013).

For the same reason, the R. & R. correctly found that Petitioner failed to demonstrate that trial counsel was ineffective for not introducing evidence of his good character. (See Objs. at 19-21.) As the Magistrate Judge noted, counsel may have "strategically decided that 'the inherent credibility, reliability, negative association, and bias problems associated with . . . ex-girlfriends[] outweighed any potential benefit'" of

calling Metoyer as a character witness (R. & R. at 60 (citation omitted)), including the possibility that if he had the jury would have been charged with a good-character instruction (see Objs. at 20). The R. & R. relied partly on Gentry in recommending denial of Petitioner's claims on that score (see R. & R. at 59), undermining his assertion that it "cite[d] no authority requiring that [he] submit a declaration from trial counsel" (Objs. at 19).

Gentry also makes plain the fallacy in Petitioner's suggestion that the Magistrate Judge wrongly failed to credit the Petition's factual assertions and impermissibly speculated about reasons for counsel's silence. (See id. at 11-12.) The cases Petitioner relies on to make that point are state direct-appeal cases discouraging judges from speculating about an attorney's decisionmaking before the appellant has had an opportunity to develop the factual record in a state habeas proceeding. (Id. at 12 (citing People v. Diaz, 3 Cal. 4th 495, 557-58 (1992), and People v. Lucero, 23 Cal. 4th 692, 728-29 (2000)).) Here Petitioner had the opportunity and indeed the responsibility to develop the record and still has failed to meet his burden.

In any event, assuming Petitioner's allegations about counsel's performance were true — namely, that without good cause he failed to object at various times — the Magistrate Judge correctly recognized that any error was not prejudicial given the convincing evidence of Petitioner's guilt and the limiting instructions; that conclusion is buttressed by Petitioner's acquittal of sexually assaulting John Doe. (See R. & R. at 37-39, 44-45, 61.)

6

The Magistrate Judge properly resolved the Petition's other
claims. For instance, the R. & R. did not "overlook[]" that
evidence of Petitioner's uncharged sex crimes may have affected
the jury's verdict and that the prosecutor stressed Petitioner's
propensity to commit sex crimes. (Objs. at 24-25.) Rather, it
noted that when relevant, California law "permits the jury to
infer" — and a prosecutor to argue — "that a defendant is
predisposed to commit sex crimes" and that no clearly established
federal law holds otherwise. (R. & R. at 35; see also id. at 64-
65.) The R. & R. also acknowledged potential ambiguities in the
jury instructions pertaining to the uncharged-crimes evidence
(see Objs. at 28-30) but correctly found that "the
court of appeal was not objectively unreasonable in finding that
the instruction was not so ambiguous that the jury was reasonably
likely to have misapplied it" (R. & R. at 72).

Nor did the Magistrate Judge "overlook[]" Petitioner's claim
that if "Jane Doe 1 could not remember the incident, then she
could not testify as to whether she consented" to sex with him.
(Objs. at 30 (emphasis omitted).) The Magistrate Judge found
that as the court of appeal held, "ample evidence supported the
jury's conclusion that Petitioner should have known or did know
that JD1 was incapable of giving legal consent." (R. & R. at
83.) In doing so, she rejected Petitioner's argument that
"because [JD1] didn't remember the sexual contact, he couldn't be
convicted of assaulting her" (id. at 82 (citation omitted)),
finding that "[e]ven if [JD1] had amnesia and even if she seemed
to consent . . . a rational trier of fact still could have found
beyond a reasonable doubt that she was not 'capable of exercising

the degree of judgment a person must have in order to give
legally cognizable consent' . . . and that Petitioner must have
known that" (id. at 83 (citation omitted)).

　　　　Having reviewed de novo all portions of the R. & R. to which
Petitioner objected, the Court accepts the findings and
recommendations of the Magistrate Judge.

　　　　IT THEREFORE IS ORDERED that the Petition is denied and
Judgment be entered dismissing this action with prejudice.


DATED: November 11, 2019　　　＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿＿
　　　　　　　　　　　　　　　　ANDREW GUILFORD
　　　　　　　　　　　　　　　　U.S. DISTRICT JUDGE